## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *v.* | ) | **Case No. 1:23-cr-00005 (APM)** |
| | ) | |
| ERIC CHRISTIE, | ) | |
| | ) | |
| Defendant. | ) | |

### REPLY TO GOVERMENT OPPOSITION

Comes now the Defendant, ERIC CHRISTIE, by and through undersigned counsel, and respectfully replies to the government's response in ECF No. 17 in opposition to release and moves this court to revoke the magistrate's detention order and release him on personal recognizance or under conditions of release. Mr. Christie supports his request as follows:

**I. BACKGROUND**.  Mr. Christie submitted the motion to revoke the magistrate's detention order and release him on bail in ECF No. 15. The government responded in opposition in ECF No. 17.

**II. ARGUMENT**:

Mr. Christie should not have been denied bail by the magistrate, where the denial can be attributed to misrepresentations by the government that had nothing to do with flight risk, which was the purported reason for the hearing on December 23, 2022. Mr. Christie requests that this Court release him given that he has lived his life (he is fifty-six years old) as a nonviolent, caring human, and is a peaceful man who will appear before this Court when required. He has no prior misdemeanor or felony convictions. There is no evidence to remotely suggest he would flee, while the evidence shows Mr. Christie has appeared when required. Despite the government's unfounded assertions that defy the truth as can be seen by our own eyes in videos, he did not flee arrest and

did not ever demonstrate intent for or actual violence. Mr. Christie's respect for the judicial branch and courts is shown in his history.

This reply to the response at ECF No. 17 notes that the government is unfortunately doubling down on the misrepresentations made to the California magistrate and has added ad hominem attacks on a peaceful man who loves America and trusts in the court system. Mr. Christie wants his day in court. Mr. Christie is not charged with a crime of violence. 18 U.S C. Section 3142(f)(1) does not apply here, and the government is trying to backdoor in false claims of dangerousness because it has no preponderance of or any evidence to show a flight risk.

Even if for a traffic ticket with mitigating circumstances, Mr. Christie has gone to and believes in the authority of the courts. In the 2011 case the government cites in its response (ECF No. 17 at 5), Mr. Christie retained an attorney and went to court. He showed up for every hearing, where all counts beside a single infraction were dismissed well prior to trial. He pled *nolo contendre* to an infraction related to being in a park. He did not resist arrest or assault any police as falsely claimed by the government by its reference to an unauthenticated report from a period where the police were conducting entrapment operations against gay men.  Nobody entered any deposition or sworn statement that he assaulted police. The investigation and litigation resulted in the District Attorney's determination there was no resistance to arrest. The government's inference that the District Attorney dismissed and truthful charges of assaulting police is preposterous. The police statements and depositions are missing while the government wants to introduce an inflammatory, unauthenticated report that was for all purposes thrown out by the District Attorney at the time. This was straightforward targeting of gay men.

In considering relevance, the 2011-2012 case stands for the truth that Mr. Christie is not a flight risk even when presented with serious charges. The government's introduction of the case

shows that Mr. Christie does not flee. The resolution of the case showed that Mr. Christie never attempted any harm against police. As contained in the motion at ECF No. 15, Mr. Christie has been rooted in the Los Angeles area for nearly forty years. His home, family, friends, and work are there. He made no preparations to flee for almost two years after January 6, 2021. And as stated in the motion, the factors normally considered for flight risk - which the government ignores - are ties to the community, history, characteristics, no preparations to flee, no place to flee to, no money, no contacts outside the area, and no other resources. An assessment of Mr. Christie's flight risk places it at zero.

Given his historical willingness and reliability in appearing for court appearances as major considerations among all the factors for 18 U.S.C. Section 3142(f)(2), Mr. Christie is not a flight risk. He appeared for cases in 1991, 1994-95, and 2011-2012. He paid a couple of traffic fines and serious charges against him were dismissed in the 2011-2012 case. The preponderance of the evidence for not being a flight risk is in Mr. Christie's favor where for three cases he appeared in court while the government has no evidence of any failure ever to appear. The government can show no preparations or ability to flee because none exist. It can show no violence because none exists. The government has thus gone on an expedition to create an appearance that Mr. Christie will not show up for this Court and will not obey conditions of release. As the Judges of this district court have held, "Detention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise, the scope of detention would extend beyond the limits set by Congress." *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021). Here, the government reverses the logic and states Mr. Christie will not comply so he must be a flight risk.

The December 16, 2022 pretextual traffic stop was a government debacle. On page 1 the government wrote, "Christie fled in his vehicle when patrol officers first attempted to arrest him, and he triggered a three-hour armed standoff when an FBI SWAT team arrested him a week later." There was no "attempt" to arrest Mr. Christie on either occasion. On December 22, the government specifically told him that he was not under arrest. Exhibit 1 (ECF No. 15-1) as well as Mr. Christie's attorney who was a witness and made statements as captured in the transcript, as well as the government audio of the "Crisis Negotiation Team" (CNT) attest to the truth that the FBI stated repeatedly that Mr. Christie was not being arrested. The only warrant mentioned and produced was a search warrant, without affidavit, that was not on-site when Mr. Christie requested to see it. On December 16, 2022, Mr. Christie was never told he was under arrest. A person cannot flee a non-existent arrest.

And yet the government created its own non-existent arrest in its reply:

Christie continued to refuse to be arrested. He demanded to see the arrest warrant. When he saw it, he insisted it was invalid. At 10:55 a.m., Christie told the FBI—as clearly captured in contemporaneous audio recordings attached to the Government's submission.

ECF 17 at 8.

In the above, the government now equates a search warrant with an arrest warrant. Every single reference and point of discussion was over the search warrant. Yet the government misrepresented to this Court that there was discussion about an arrest warrant when the FBI specifically said no arrest was involved. Credibility goes to Mr. Christie.

The government then takes out of context Mr. Christie's statements, amidst his upstairs having been doused with OC dangerous pepper spray twice that "this is not going to end well," "you have taken this too far," and "you better come in here shooting." As stated in ECF 15, Mr. Christie was in fear he was going to be abducted without a valid warrant and placed somewhere

as a terrorist. He never once said or hinted that he would hurt any law enforcement. He never pointed one of his legally owned weapons at anyone. He believed that the FBI wanted to kill him and told them they better come in shooting - meaning if they wanted to kill him, because their plan had failed, it was not going to end well for Mr. Christie because he had called witnesses and they could not shoot him dead without witness if he walked outside. He believed they would consider whether to enter and shoot him dead.

On December 16, 2022, Mr. Christie left the scene of what was vocalized as a threat of violence against him as captured in video. Despite what our own eyes and ears tell us from the full video, the officer never said Mr. Christie was under arrest. He said that if Mr. Christie did not exit his vehicle he could be arrested for obstruction. The video shows that Mr. Christie was talking with the officer and argued about being ordered out of his car after showing documents for a valid registration, license, tags, and stickers. Whether Mr. Christie heard anything about *potential* obstruction is at issue because he had called a friend and either he or both were talking. What Mr. Christie did hear were the words that if he did not exit, the officer was going to break his car window. There are more than enough media reports of police excessive force and deaths. The threat by the officer to break glass into Mr. Christie's face and body was terrifying to him. He already has anxiety. Driving away was a natural, human response even without pre-existing anxiety that the FBI had to know about.

The arrest warrant for Mr. Christie was issued on December 15, 2022 but the FBI's plan to orchestrate a pretextual traffic stop away from his residence rather than right by Mr. Christie's parking garage creates a mystery as to why and when the plan was developed. The FBI did not engage local traffic police. Any astute driver would wonder why the California Highway Patrol (CHP) sped up for two blocks to catch up, and then while stopped at a stop sign, the police flashed

their lights and used the siren. This was out of the blue and on a residential street - with a claim to Mr. Christie on video that the stop was for a missing sticker on the rear plate. A person with common sense would know there was no way the CHP officer could have seen that a sticker was missing from the rear plate from the distance that the pursuit by CHP to catch up began. The video shows the officer claiming there is a problem with the front plate when the CHP officer never went in front of the car before making the statement.

The entirety of the December 16, 2022 debacle was FBI orchestrated. FBI Agent Turner admitted in testimony that the CHP traffic stop was pretextual. He said he was observing from an unspecified distance and "The arrest plan was to have CHP conduct a traffic stop, detain Mr. Christie, and then transfer custody to the FBI." Transcript at 34:22-23. Instead of sending a note to Mr. Christie through his attorney for self-surrender, and instead of waiting near Mr. Christie's entrance to the parking garage, and instead of the CHP officer saying outright there was a warrant for Mr. Christie's arrest, the FBI hatched a plan where without any reasonable suspicion the CHP would pretextually stop Mr. Christie for a traffic violation so they could turn him over to the FBI. This was staged and was such that the agreement beforehand was that if Mr. Christie "fled" the CHP would not pursue.

The government failed to provide the exculpatory evidence that Mr. Christie has always complied with normal police behavior. In the timeframe of 1988, Mr. Christie was the subject of identity theft. The identity thief had a warrant out under his alias, which was Mr. Christie's name. Mr. Christie was stopped on more than one occasion for a traffic infraction where the police checked his documents and immediately told him there was a warrant for his arrest. And they did in fact arrest him. Not once did Mr. Christie try to evade or resist arrest. Each time he had to wait for the fingerprinting and other identity verification process to confirm that he was not the person

wanted in the warrant. For all Mr. Christie knew on December 16, 2022, the identity thief had a new warrant. Had the CHP officer said he was under arrest due to a warrant, Mr. Christie would have complied as he had on multiple occasions in the past. This past instances add to the count of evidence being in Mr. Christie's favor for at least five versus zero evidence for the government. If the standard is preponderance of the evidence, then past behavior and characteristics show that Mr. Christie should be released. He is not an anarchist. The government could have found the 1988 instances where he complied, was arrested, and then after a short period in jail was released.

Mr. Christie, given the video evidence, has credibility here while unfortunately law enforcement does not. The government compounded its misrepresentation by providing what might reasonably be described as a false CHP report of arrest (Govt. EXH 17-3 CHP Report). The report claims the officers were on routine patrol and saw Mr. Christie's car. This is false. The video shows us that the CHP officers were stopped and parked on a road that intersected Albers St, where they did not see Mr. Christie's car. The video has no audio at all during the speeding to chase down Mr. Christie. A false claim in the report is that they were driving on the (residential street) and Mr. Christie came to a rolling stop. The report then claims that Mr. Christie was stopped for not having tags, while the video clearly shows the rear tag. The report omitted the threat about breaking in Mr. Christie's window.

In the video, not a single time did the CHP officer say, "you are under arrest." This is on video. Mr. Christie had his rear window partially down for the conversation, presumably to avoid a surprise macing. Yet the report claims an attempt at arrest was made. There is the video showing the officer's only stated concern was a missing rear plate sticker. The report says the stop was legitimate with no mention of supporting the FBI by use of a pretextual traffic stop as for a federal arrest. *Id*. This misrepresentative report is the government's evidence. Further, the video shows

that the stationary police never saw Mr. Christie prior to turning onto the road he was driving on, speeding, and then turning on lights and siren at the corner. Credibility is in favor of Mr. Christie.

In planning and executing the December 22 search assault on Mr. Christie's home, the use of SWAT was used under the excuse that Mr. Christie might not comply with arrest. The operation was not conducted for arrest. The operation deliberately stopped before arrest and created theater. By the FBI's own account at https://www.fbi.gov/investigate/how-we-investigate/tactics, SWAT trains and is used for:

> **Special Weapons and Tactics (SWAT) Team**
> Once on the team, these agents do difficult and dangerous work, including:
> - storming barricaded buildings
> - breaching locks
> - arresting dangerous suspects
> - rescuing hostages
> - climbing or rappelling in difficult terrain
>
> Because the work is so dangerous, SWAT team members are heavily equipped with pistols, assault and sniper rifles, and shotguns.

> **Critical Incident Response Group (CIRG)**
> The FBI's Critical Incident Response Group (CIRG) provides rapid assistance to incidents in a crisis. Through CIRG, expert assistance is available in cases involving the abduction or mysterious disappearance of children, crisis management, hostage negotiation, criminal investigative analysis, and special weapons and tactics. CIRG also assists in the assessment, selection, and training of FBI undercover employees.

By the account of Mr. Christie's California attorney, the search was staged. By all accounts the operation was abnormal, where even the unauthenticated log (Govt ECF 17-5 at 1) that nobody knows who wrote what and when, shows that the breaking in through multiple entrances was simultaneous with CNT calls. The plan was to create a crisis by all appearances.

The introduction of evidence that Mr. Christie legally owned firearms is obfuscation of the horrendous assault on the home. (See EXH 1 pictures). The FBI has executed searches and arrests of numbers of January 6 defendants, and other Americans, who legally own firearms. There was never a single threat by Mr. Christy to use them. They were not taken as part of the search because

they were evidence of nothing. Mr. Christy never pointed a weapon at any law enforcement. The government referenced the CNT call audio from Ms. Chambers where she told Mr. Christy to put his weapons away. ECF No.17 at 9. This was upon direction and words from the FBI. (See 15-1).

Just to be inflammatory, the government wrote:

> "The FBI found a loaded Glock handgun with the magazine inserted into the gun and a round in the chamber. Tr. 60:1-61:15; Ex. 9 (search warrant photographs), pp. 4-5. Simply put, Christie could have fired the Glock handgun during the standoff with a single pull of the trigger. Tr. 61:13-15 (testimony of Agent Turner that "there was a round in the chamber, and the significance of that is, if someone pulled the trigger, if the weapon is functioning properly, it would fire").

ECF 17 at 10.

Mr. Christy asserts that the Glock was not loaded and there was no magazine inserted in the handgun. He will testify that the picture was staged. Thus far, credibility has been in his favor throughout, and there is no reason to doubt him here. The government loses credibility by writing that Mr. Christie's statement that his guns were with him (meaning in the condo) equals that he said his guns "were on him." ECF No. 17 at 14. As stated in ECF No. 15, the FBI was demanding Ms. Chambers use words about guns, and it did not see any gun in his hand (or why ask "where are they?") once he was arguing about the search warrant. They would not have asked for a location if they knew he was holding a gun. Insertion of a bullet and magazine made a better picture story.

Further, the government doubles down that Mr. Christie's innocent purchase of a handgun over a week after the non-served subpoena was related to the subpoena. And the government overemphasizes the sign, where the picture was obtained by the FBI by illegal entry, without showing that it was for trespassers. The sign was smaller than a standard sheet of computer printer paper, yet the FBI pictures show it as huge. It was small and required someone to walk up and read it. After the search, pictures do not show that the sign seen on November 28, 2022 was still on the door. (EXH 2). The sign did not say he would shoot any trespasser who entered his home at night

or daytime. No mention is made of guns or weapons. The sign did not say there would non-survivors. The sign said that trespassers would be prosecuted under the law. It referred to trespassers who might enter his castle, provided his contact information, and asked that trespassers stay out of the common areas too since those comprise private property. Exhibit 1 shows some of the excessive force damage to the home.

In attempting to litigate the events of January 6, 2021, the government completely mischaracterized what is on video by claiming "Through a bullhorn, he encouraged rioters to push past police as they struggled to keep the rioters from advancing up the Capitol steps." Mr. Christie never told anyone to go up the steps or push past police. There is no indication anyone listened to him when he asked people to come join him - below the steps - for a "MAGA party." He had his back to the steps and never used words that could be interpreted as telling anyone to push past police and go up the steps.

Mr. Christy does not have to prove innocence but to counter the government's misrepresentations, highlights the following facts: He did not push aside barriers, assault police, participate in any violence, encourage any violence, enter the building, or do anything besides use protected First Amendment speech in a peaceful manner in a location that he believed was permitted and approved for speech. From his viewpoint within a crowd, and when expecting entry to the grounds for a First Amendment speech event, he was toward the rear of the crowd on the east side when he noted the crowd moving forward. Police at some point could be seen moving toward a group coming from the north, and other police either waved people forward or moved to the steps. Mr. Christy ran forward in joy. It appeared he could lawfully go forward. His speech in the recordings shows he was happy, referring to a "MAGA party." He was not angry and encouraged no anger. The government's statement that he "played an instrumental role in

fomenting the ongoing riot" (ECF No. 17 at 4) is storytelling with no support in facts. The government's claim that the crimes charged are felonies should be disposed of rapidly when motions address that the enhancement of punishment for a deadly or dangerous weapon does not apply in this case, similar to what has been found in other January 6 cases in regard to a household item that is not inherently dangerous where a child can purchase it; and where no intent to use the item and no use can be shown.

Right now Mr. Christie is presumed innocent. Any of his actions, words, and intent at the Capitol are a matter for motions and trial, and the government's misrepresentations in its response should not unfairly prejudice this honorable Court in regard to his release under the Bail Reform Act. Under the Bail Reform Act Mr. Christie should be released immediately.

## III. CONCLUSION.

Mr. Christie should be released on bond. For his entire life he complied with the law, law enforcement, and courts. The government saw no danger for almost two years and did not advise law enforcement Mr. Christie was a danger to anyone. He is not a flight risk. If the Court sees a potential problem, the Court can hold his passport, order that he not purchase any new firearms, and order that he not keep and firearms in his home. The Court has a world of release options if it believes any portion of the government's narrative where until Mr. Christie refused to talk with the FBI - as was his right - he lived lawfully and peacefully at home from January 7, 2021 until December 22, 2022. The factors under Section 3142 and the Chrestman factors all point toward release. Again, the speculation about a threat to law enforcement on December 22 or any other time are not representative of facts.

Wherefore, Mr. Christie respectfully renews his request for release as contained in his motion at ECF No. 15.

11

Dated February 17, 2023                         Respectfully submitted,

                                                /s/ *Carolyn A. Stewart*
                                                Carolyn A. Stewart, Bar No. FL-0098
                                                Defense Attorney
                                                Stewart Country Law PA
                                                1204 Swilley Rd.
                                                Plant City, FL 33567
                                                Tel: (813) 659-5178
                                                Email: Carolstewart_esq@protonmail.com


### CERTIFICATE OF SERVICE

I hereby certify on the 17th day of February 2023, a copy of the foregoing was served

upon all parties as forwarded through the Electronic Case Filing (ECF) System.

                         /s/ Carolyn Stewart Esq.
                         Carolyn Stewart, Esq.