**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 23-CR-005 (APM)** |
| | : | |
| **ERIC CHRISTIE,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**UNITED STATES'S MOTIONS *IN LIMINE***</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits motions *in limine* in an omnibus brief.  The four motions contained in this brief are a: 1) Motion *in Limine* to Admit Certain Visual and Digital Exhibits; 2) Motion *in Limine* to Admit Certain Statutes and Records; 3) Motion *in Limine* to Limit Unnecessary Discussion of Security-Related Topics; 4) Motion *in Limine* to Preclude Defendant from Introducing his own Out-of-Court Hearsay Statements; and 5) Motion *in Limine* to Preclude Improper Defense Arguments.

For each motion herein, the United States asks that the Court grant the requested relief or, if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

**I.     Motion *in Limine* to Admit Certain Visual and Digital Exhibits**

On June 1, 2023, the United States will provide its preliminary exhibit list to Defendant and the Court.  *See* ECF No. 26.  On this date, the United States will identify and provide copies of premarked exhibits.   This will include photos and text messages recovered from Defendant's Samsung phone, and videos and photographs taken by third parties who were present outside of

1

the U.S. Capitol building on January 6.  Defendant is required to raise any objections to the proposed exhibits at the pre-trial conference on June 8, 2023.  *Id.*  The following sections describe each category of evidence and explain why each is admissible as relevant and authentic.

### A.    Legal Framework

"As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial."  *United States v. Blackwell*, 694 F.2d 1325, 1329 (D.C. Cir. 1982).  To satisfy this requirement, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Rule 901(b) provides a nonexhaustive list of examples of methods for showing authenticity.  Those include, as relevant here:

> (1) Testimony of a Witness with Knowledge.  Testimony that an item is what it is claimed to be.
>  . . . .
> (3) Comparison by an Expert Witness or the Trier of Fact.  A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) Distinctive Characteristics and the Like.  The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
>  . . . .
> (7) Evidence About Public Records.  Evidence that: (A) a document was recorded or filed in a public office as authorized by law; or (B) a purported public record or statement is from the office where items of this kind are kept.
>  . . . .
> (9) Evidence About a Process or System.  Evidence describing a process or system and showing that it produces an accurate result.

Fed. R. Evid. 901(b).

In making the showing necessary for admissibility, "the proponent's 'burden of proof'" is "slight," and the "ultimate resolution of the evidence's authenticity is reserved for the jury."  *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) (quoting *McQueeney v.*

*Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985)); *United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006).  To make the requisite prima facie showing, "circumstantial evidence of authenticity can be sufficient."  *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981).  Such evidence need not "rule out all possibilities inconsistent with authenticity, [nor]  prove beyond any doubt that the evidence is what it purports to be." *Hassanshahi*, 195 F. Supp. 3d at 48 (quoting *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999)).  Rather, the party offering the evidence need only "demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated."  *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)).

In a previous trial arising from the Capitol Riot, in which the defendant contested the authenticity of video evidence proffered by the United States, the Honorable Rudolph Contreras described the authenticity threshold for the fact-finder to consider the proffered evidence as follows:

> The question here is, therefore, whether the government's showing regarding the open-source videos could permit a reasonable fact-finder to find that they are, in fact, what the government claims.

*See* Ex. A, *United States v. Kyle Fitzsimons*, Trial Tr. 09/27/22 ("Fitzsimons Verdict"), at 4.

### B.    Overlapping Bases for Authentication of Visual and Digital Exhibits

As introduced herein, there are multiple, overlapping bases that the United States intends to use for the authentication of photographs and videos at trial.  The United States offers this

nonexclusive list of bases for authentication should the defendants object to the authenticity of the proposed multimedia exhibits.

### 1.  Authentication by a Witness with Knowledge

To begin, any witness with knowledge of the events depicted in a photograph or video can authenticate the evidence, including but not limited to the person who took the photograph or video.  *See* Fed. R. Evid. 901(b)(1).  Here, that includes any person who was present for the events depicted in the photograph or video and has a recollection sufficient for them to recognize the scene depicted.  *See, e.g.*, *Am. Wrecking Corp. v. Sec'y of Lab.*, 351 F.3d 1254, 1262 (D.C. Cir. 2003).  Any individual that observed the events depicted in the photograph or video can testify that the photograph or video appears to fairly and accurately show the events that took place.  *See* FRE 901(b)(1); *see also United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988).

Even a person who was not present for a specific event can circumstantially establish the authenticity of a photograph or video depicting that event if they can (1) identify the location(s) depicted in the video; and (2) establish that the video is generally consistent with their knowledge of events that occurred at that location.  *See, e.g.*, *Rembert*, 863 F. 2d at 1028 ("Even if direct testimony as to foundation matters is absent . . . the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." (alteration in original) (quoting *United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir. 1977) (Kennedy, J.))); *United States v. Holmquist*, 36 F.3d 154, 169 (1st Cir. 1994) ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."). On this authority, the United States could authenticate riot footage through, for example, the

testimony of an experienced U.S. Capitol Police officer who is familiar with all areas of the Capitol and who knows that the events of January 6 are unique in modern history. *Cf. Safavian*, 435 F. Supp. 2d at 40–42 (authenticating emails based on "distinctive characteristics" and citing Fed. R. Evid. 901(b)(4)); *Klayman v. Judicial Watch*, 299 F. Supp. 3d 141, 145–46 (D.D.C. 2018) (admitting emails and advertisements by comparing later versions with admitted versions). Again, this is a low bar that requires only a prima facie showing that the evidence is what the United States purports it to be—namely, photographs and videos of the Capitol siege in progress.

### 2.  Authentication by Metadata

Where necessary, the United States can also authenticate the specific time or place of a photograph or video using metadata. When a digital media file is extracted from a device or otherwise seized by the government, it often contains metadata that specifies the time, and sometimes the place, the file was created, along with other information. At trial, the United States will sometimes call law enforcement personnel to testify about the process of extracting data from digital devices and reviewing the extracted materials. Such testimony is sufficient to make a prima facie showing that a photograph or video was made at the time or place reflected in the metadata. *See, e.g.*, *United States v. Banks*, 43 F.4th 912, 918 (8th Cir. 2022) ("While the officers were not present when the images and videos were first captured, their testimony [about reviewing extraction reports] provided a rational basis to believe that the exhibits had been created within the relevant time frame and stored on [the defendant's] cellular phones."); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 547–48 (D. Md. 2007) ("Because metadata shows the date, time and identity of the creator of an electronic record, as well as all changes made to it, metadata is a distinctive characteristic of all electronic evidence that can be used to authenticate it under Rule 901(b)(4)."); *United States v. Gilbreath*, No. 3:19-CR-127-TAV-HBG, 2020 WL 5441226, at *3 (E.D. Tenn.

Sept. 10, 2020) ("Metadata . . . showed that these images were created at defendant's home and on defendant's cell phone on September 12, 2015.").

### 3. Authentication by Comparison

Similarly and alternatively, in instances where precision of time and place is relevant but cannot be established by a witness with knowledge or by the media's metadata, the United States will authenticate exhibits by reference to other, already-authenticated exhibits depicting the same time and place. This method of "[a]uthentication by comparison is routine." *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1371 (Fed. Cir. 2021); *see also United States v. Hoyt*, 946 F.2d 127, at *1 (D.C. Cir. 1991) (unpublished) (noting that Fed. R. Evid. 901(b)(3) permits authentication by comparison); *Stearns*, 550 F.2d at 1171 (finding that first picture "authenticates the other four pictures as to time"); *Safavian*, 435 F. Supp. 2d at 40 (allowing authentication of emails by means of comparison with other "e-mails that already have been independently authenticated"). Judge Contreras, in the *Fitzsimons* trial, held that the United States had adequately authenticated eight videos by showing that they were consistent with other videos, including body-warn camera video and closed-circuit video, which had been introduced into evidence through other means. Fitzsimons Verdict at 5-6; *compare* Fitzsimons Verdict at 7 (excluding proffered public source video that lacked corroborating authenticated evidence and only briefly showed the defendant from the back).

### 4. Authentication Based on a Process or System that Produces an Accurate Result

Certain multimedia, such as security cameras (CCTV) operated by the U.S. Capitol Police (USCP) and body-worn cameras (BWC) worn by officers of the Metropolitan Police Department (MPD) can be authenticated by "describing a process or system and showing that it produces an

6

accurate result," Fed. R. Evid 901(b)(9).  *See United States v. Dale*, 991 F.2d 819, 843 (D.C. Cir.

1993) ("Tapes may be authenticated by testimony describing the process or system that created

the tape."); *United States v. Pinke*, 614 F. App'x 651, 653 (4th Cir. 2015) (unpublished) (finding

"sufficient evidence of authentication" of a prison's closed circuit video where "a Government

witness explained the manner in which the prison's closed circuit video system operates, the means

by which he obtained the video, and that he downloaded it onto the DVD that was played for the

jury.").

The Government will pursue stipulations with defense counsel related to the authenticity

of USCP CCTV and MPD BWC.  These stipulations have been entered into frequently in the

dozens of trials arising from the Capitol Riot.  If necessary, however, USCP and MPD witnesses

are available to testify to the reliability of the systems employed by USCP and MPD, respectively,

to create and maintain these videos.

### 5.  Authentication Based on Status as an "Official Publication"

Certain evidence in this case, such as video taken by the Senate Recording Studio, is also

"self-authenticating," meaning it "require[s] no extrinsic evidence of authenticity in order to be

admitted."  Fed. R. Evid. 902.[1]  This is so because it qualifies as an "Official Publication[],"

defined as any "book, pamphlet, or other publication purporting to be issued by a public authority."

Fed. R. Evid. 902(5).  Official materials published on government websites fall into this category

and are self-authenticating under Rule 902.  *See Williams v. Long*, 585 F. Supp. 2d 679, 685–90

(D. Md. 2008); *cf. MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 503–04

---

[1] Further underscoring the multiple paths to authentication, the Senate Recording Studio footage
may also be authenticated through any of the mechanisms outlined in this motion, including Fed.
R. Evid. 901(b)(1), (3), (4), (9).

(S.D.N.Y. 2017) (Congressional transcripts); *Singletary v. Howard Univ.*, No. 1:17-cv-01198, 2018 WL 4623569, at *4 n.1 (D.D.C., Sept. 26, 2018) (government-issued guidebook), *rev'd on other grounds*, 939 F.3d 287.[2]

The United States Senate uses the Senate Recording Studio to contemporaneously record Senate proceedings and distribute those recordings to the public. *See* https://www.senate.gov/–floor/, last accessed Dec. 15, 2022 (publicly available archived recordings of Senate Recording Studio).  The Senate Recording Studio recorded the proceedings relating to the Electoral College Certification on January 6, 2021, up to the point when the rioters breached the building and forced the proceedings into recess. *See id.*, January 6, 2021.  Subsequently, the Senate Recording Studio recorded the Electoral College Certification proceedings after the rioters were cleared from the Capitol Building and the session resumed. *Id.*  During the interim, the Senate Recording Studio captured footage of rioters who were present on the Senate floor during the recess.

### 6.    Authentication by FRE 902(14) Certification

Text messages, photos, and other data, recovered from Defendant's Samsung phone are self-authenticating if accompanied with a certification that comports with FRE 902(11) and (12). Fed. R. Evid. 902(14); *See United States v. Dunnican*, 961 F.3d 859, 871-72 (6th Cir. 2020) (finding the district court did not commit plain error in admitting text messages extracted from a defendant's cell phone that were properly authenticated under Rule 902(14)).

---

2 Similar to other videos, these exhibits can also be authenticated by any person with direct knowledge of the scene depicted or with sufficient circumstantial knowledge, *see* Fed. R. Evid. 901(b)(1), or through metadata or comparison, *see* Fed. R. Evid. 901(b)(4).

## II.     Motion *in Limine* to Admit Certain Statutes and Records

### A.     Judicial Notice of the Federal Electoral College Certification Law

The proceedings that took place on January 6, 2021, were mandated by, and directed under the authority of, several constitutional and federal statutory provisions.  In fact, as Vice President Pence gaveled the Senate to Order on January 6, 2021 to proceed with the Electoral College Certification Official Proceeding, he quoted directly from, and cited to, Title 3, United States Code, Section 17.

The United States requests that the Court take judicial notice of, and admit into evidence, copies of Article II, Section 1 of the Constitution of the United States, the Twelfth Amendment, as well as 3 U.S.C. §§ 15–18 relating to the Electoral College Certification Official Proceedings. It is well established that district courts may take judicial notice of law "without plea or proof." *See United States v. Davila-Nieves*, 670 F.3d 1, 7 (1st Cir. 2012) (quoting *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 320 (1st Cir. 2004)).   The United States makes this request even though "no motion is required in order for the court to take judicial notice."  *Moore v. Reno*, No. 00-5180, 2000 WL 1838862, at *1 (D.D.C. Nov. 14, 2000).

### B.     Admission of the Congressional Record and S. Con. Res 1

The Congressional proceedings on January 6, 2021, were memorialized in the Congressional Record.  The Congressional Record is a public record under Federal Rule of Evidence 902(5).  *See MMA Consultants*, 245 F. Supp. 3d at 503–04.  The United States intends to introduce portions of the Congressional Record at trial, including the bodies' "concurrent resolution to provide for the counting on January 6, 2021, of the electoral votes for President and Vice President of the United States," S. Con. Res. 1, 117th Cong. (2021).  For the same reasons as

the Senate Recording Studios footage above, these records should be admitted as self-authenticating.

### III.  Motion *in Limine* to Limit Unnecessary Discussion of Security-Related Topics

Certain topics that could arise at trial—namely the exact locations of USCP CCTV cameras and the protocols of the U.S. Secret Service (USSS)—have little to no probative value but would compromise significant security interests if needlessly disclosed to the public.  The United States does not intend to elicit testimony on any of these topics (as further described *infra*) in its case-in-chief and, therefore, cross-examination on them would be beyond the scope of direct examination and impermissible.  Fed. R. Evid. 611(b).  To the extent Defendant seek to argue that any of these topics are relevant and within the scope of the direct examination, the United States requests an order under Fed. R. Evid. 403 foreclosing unnecessary cross-examination on these topics.

It is well-established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses.  *See Alford v. United States*, 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615–16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses.").  A court has the discretion to prohibit cross-examination that goes beyond matters testified to on direct examination.  Fed. R. Evid. 611(b).  This is particularly so when the information at issue is of a sensitive nature.  *See, e.g.*, *United States v. Balistreri*, 779 F.2d 1191, 1216–17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which that agent did not testify on direct examination and which did not pertain to the charges in the case), *overruled on other grounds*,

*Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016).  Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning.  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

The Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).  Even evidence that may be relevant to an affirmative defense should be excluded until the defendant sufficiently establishes that defense through affirmative evidence presented during his own case-in-chief.  *See United States v. Lin*, 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663–64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief).  Preventing Defendant from exploring the topics above will not infringe on his Confrontation Clause rights because they are irrelevant to elements at issue, provide no basis for impeachment of a Secret Service witness, and do not implicate an affirmative defense.

### A.    Exact Locations of USCP Cameras

The United States seeks an order limiting the defense from probing, during cross-examination, the exact locations of U.S. Capitol Police surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial.  The United States produced such information to Defendant in discovery pursuant to the Highly Sensitive designation of the Protective Order.  Defendant has been able to make use of such information to identify

evidence and prepare for trial; however, none of the information will be relevant to any fact of consequence before the jury.

This lack of relevance must be balanced against the national security implications at stake here.  The U.S. Capitol Police's surveillance system serves an important and ongoing function in protecting Congress, and therefore, national security.  Furthermore, the United States represents that the maps that show the physical location of cameras have been designated as "Security Information" under 2 U.S.C. § 1979, which generally requires approval of the U.S. Capitol Police Board before they may be released.

Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded considering the ongoing security needs of Congress.  Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning.  A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not.  Additionally, presenting the map of all U.S. Capitol Police cameras would risk compromising these security concerns for no additional probative value since Defendant did not enter the U.S. Capitol building.

Here, the video footage itself reveals the general location and angle of the camera's positioning.  Additional details as to the precise location of the cameras are not relevant to the jury's fact-finding mission.  Even assuming the evidence that the United States seeks to exclude is marginally relevant, such relevance is substantially outweighed by the danger to national security.  The Supreme Court has recognized that trial courts' balancing should account for concerns extrinsic to the litigation, such as "witness' safety." *Olden v. Kentucky*, 488 U.S. 227, 232 (1988) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).  Accordingly, courts have properly balanced the sensitivity of national security-related information against the

12

probative value of such information to the case, excluding the evidence where its relevance is slight.  *See, e.g.*, *United States v. Marshall*, 544 F. Supp. 3d 1032, 1042 (D. Mont. 2021); *United States v. Mohammed*, 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005); *cf. United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (endorsing balancing test in context of Classified Information Procedures Act).  If a map that revealed the location of all Capitol cameras were introduced in this trial, or in any trial, it would become available to the public and foreign adversaries.  Immediately, anyone could learn about the U.S. Capitol Police's camera coverage as of January 6, 2021, and, importantly, could learn about the parts of the Capitol where cameras were not installed.  Broader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses.

**B.**     **Secret Service Protocols**

Defendant is charged with violating 18 U.S.C. § 1752(a)(1) and (b)(1)(A) for entering and remaining in a restricted building or ground with a deadly or dangerous weapon, and § 1752(a)(2) and (b)(1)(A) for engaging in disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon.  To meet its burden of proof at trial, the United States will call a witness from the United States Secret Service to testify that at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Mike Pence and his two immediate family members, all of whom were present at the Capitol.  The witness will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members.  The purpose of this testimony will be to explain, in part, the bases for enhanced security controls at the Capitol on January 6 as well as establish an element of the offenses charged at Counts  One and Two, namely, that the Capitol and its grounds were a "restricted area" as that term is used in 18 U.S.C. § 1752 on January 6, 2021.

The very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive branch and, by extension, national security.  Thus, the United States seeks an order limiting the cross-examination of the Secret Service witnesses to questioning about the federally protected function performed by the Secret Service as testified to on direct exam, namely, protecting the Vice President and his family.  The United States further requests that such order preclude cross examination that would elicit information that does not directly relate to whether the Secret Service was performing that function at the Capitol on January 6, 2021.  Specifically, cross-examination should not be permitted to extend to (1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur, and (2) details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.  These topics have no relevance to any issue at controversy, and even if they did, any relevance would be substantially outweighed by the danger of prejudicing the United States's legitimate interest in the safety of senior government officials.  *See* Fed. R. Evid. 403.

Cross-examination of Secret Service witnesses about extraneous matters beyond the scope of direct examination should be excluded as irrelevant or unduly prejudicial.  Specifically, the Secret Service's general protocols about relocation for safety should be excluded as irrelevant because such evidence does not tend to make a fact of consequence more or less probable.  *See* Fed. R. Evid. 401.  Similarly, evidence of the nature of Secret Service protective details is not relevant in this case.  The disorder on January 6 interfered with the Secret Service's duties to protectees in this case insofar as they were required to evade the mob.  The number or type of assigned agents on a protective detail is not relevant and could not alter the probability that there

was interference with the Secret Service.  None of the other elements to be proven, or available defenses, implicates further testimony from the Secret Service.

Even assuming the evidence to be excluded is marginally relevant, such relevance is substantially outweighed by the danger of confusion of the issues, undue delay, and waste of time. Broader cross-examination of Secret Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses.[3]

### C.   Law Enforcement Preparations

The United States anticipates calling witnesses at trial representing various law enforcement entities present at the United States Capitol on January 6, 2021, potentially including representatives from the United States Secret Service, the United States Capitol Police, and the Metropolitan Police Department.  Law enforcement witnesses will testify to, inter alia, the events

---

[3] If the defense believes that it is necessary to present evidence or cross-examine witnesses about the exact locations of USCP cameras or USSS procedures, the United States requests that the Court conduct a hearing in camera to resolve the issue.  Courts have found that in camera proceedings are appropriate in circumstances where security concerns like these are present.  *See United States v. Nixon*, 418 U.S. 683, 714 (1974) (affirming district court's order for in camera inspection of subpoenaed presidential materials); *United States v. Kampiles*, 609 F.2d 1233, 1248 (7th Cir. 1979) ("It is settled that in camera . . . proceedings to evaluate bona fide Government claims regarding national security information are proper."); *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977) (finding that in camera proceedings "serve to resolve, without disclosure, the conflict between the threatened deprivation of a party's constitutional rights and the Government's claim of privilege based on the needs of public security"); *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976) (per curiam) ("This Circuit, too, has repeatedly approved the use of in camera examinations as the means for resolving the conflict between a defendant's need for evidence and the government's claim of privilege based on the needs of public security.").  At any such hearing, the defendant should be required to make a specific proffer of some relevant purpose that is not substantially outweighed by the prejudice that disclosure would inflict on the United States's security interests. *Cf. United States v. Willie*, 941 F.2d 1384, 1393 (10th Cir. 1991) (explaining that a "proffer of great specificity" was necessary to support admission of testimony that could have proper or improper purposes).

at the Capitol on January 6, 2021, and the effect those events had on law enforcement and the proceedings taking place within Congress that day.  This testimony will be presented to show how government business and official functions were impeded and disrupted as charged in Count Two.

The United States does not anticipate asking these law enforcement witnesses on direct examination about their knowledge of or planning regarding the riot that would ultimately take place on January 6, 2021.  Accordingly, the United States seeks an order limiting the cross-examination of law enforcement witnesses to preclude questions related to their knowledge of or preparations for the January 6, 2021 riot.  These topics have no relevance to any issue at controversy, *see* Fed. R. Evid. 401, and even if they did, any relevance would be substantially outweighed by the risk of confusing the issues.  *See* Fed. R. Evid. 403.

## IV.   Motion *in Limine* to Preclude Defendant's Out-of-Court Statements as Inadmissible Hearsay

A defendant's own out-of-court statements are hearsay that cannot be admitted to prove the truth of any matter asserted.  Fed. R. Evid. 801, 802.  Although the United States may offer a defendant's statements as statements of a party opponent, Fed. R. Evid. 801(d)(2)(A), or other nonhearsay, a defendant has no corresponding right to admit his own statements without subjecting himself to cross-examination.

### A.   The Rule of Completeness Cannot Circumvent the Rule Against Hearsay

Nor does Federal Rule of Evidence 106, the "Rule of Completeness," provide an end-run around the prohibition against hearsay.  That rule provides that, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  Rule 106 directs the Court to "permit such limited portions

[of a statement] to be contemporaneously introduced as will remove the distortion that otherwise would accompany the prosecution's evidence." *United States v. Sutton*, 801 F.2d 1346, 1369 (D.C. Cir. 1986).  The rule does not "empower[] a court to admit unrelated hearsay." *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987).  "[T]he provision of Rule 106 grounding admission on 'fairness' reasonably should be interpreted to incorporate the common-law requirements that the evidence be relevant, and be necessary to qualify or explain the already introduced evidence allegedly taken out of context . . . .  In almost all cases we think Rule 106 will be invoked rarely and for a limited purpose."  *Sutton*, 801 F.2d at 1369.

In this case, the United States may offer statements made by Defendant in text communications or in interviews given to third parties while incarcerated in this case.   Rule 106 does not make all statements within these groups, accounts, and interviews admissible over a hearsay objection.  However, narrow portions of Defendant's statements may be admissible if they are necessary to "correct a misleading impression."  *Sutton*, 801 F.2d at 1368 (quoting Rule 106 advisory committee notes).  By way of analogy, Courts of Appeals have rejected the notion that "all documents contained in agglomerated files must be admitted into evidence merely because they happen to be physically stored in the same file."  *Jamison v. Collins*, 291 F.3d 380, 387 (6th Cir. 2002) (quoting *United States v. Boylan*, 898 F.2d 230, 257 (1st Cir. 1990)).

Accordingly, at trial the Court should reject any effort by Defendant to use the Rule of Completeness as a backdoor to admit otherwise inadmissible hearsay.

### B.   Law Enforcement Testimony Cannot Circumvent the Rule Against Hearsay

The United States anticipates that Defendant may seek to call law enforcement officers or agents, at least in part, to elicit self-serving statements made by Defendant about his travel and

activities on January 6.  Any such statements by defendants, if offered for the truth of the matter asserted, would be inadmissible hearsay.

## V.   Motion *in Limine* to Preclude Improper Defense Arguments

### A.   First Amendment

The United States moves this Court to admit in its case-in-chief statements that evince Defendant's motive or intent, or which go to prove an element of any offense with which they are charged.   In anticipation that Defendant may seek to oppose introduction of Defendant's statements on First Amendment grounds or may cite the First Amendment in arguments to the jury, the United States also moves *in limine* to preclude the defense from eliciting evidence or arguing to the jury that Defendant's statements and actions were protected by the First Amendment.

#### 1.   Admission of Defendant's Statements Does Not Violate the First Amendment

The United States intends to introduce several statements by Defendant that will aid the jury's determination on Defendant's motive and intent.  *See Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (holding that the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent").   "Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like."  *Id.*

Courts across the country, including this Court's colleagues in January 6th cases, have allowed evidence of defendants' statements for the purposes sanctioned by *Mitchell*.  As Judge Cooper ruled:

> Nor does the Court find any First Amendment concerns in the government's use of Robertson's statements to show intent. . . .  If Robertson had expressed his views only

> through social media, he almost certainly would not be here.  But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the Electoral College vote certification.  His words remain relevant to his intent and motive for taking those alleged actions.

*United States v. Robertson*, 588 F. Supp. 3d 114, 124 (D.D.C. 2022) (internal citation omitted).

Outside of the context of January 6th, *Mitchell* has been cited to uphold the admission of a wide range of statements, including but not limited to rap lyrics, terrorist materials, and speeches advocating civil disobedience.  *See United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (rap lyrics); *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (rap lyrics and tattoos); *United States v. Salameh*, 152 F.3d 88, 111–12 (2d Cir. 1998) (terrorist materials); *United States v. Fullmer*, 584 F.3d 132, 158 (9th Cir. 2009) (speeches advocating civil disobedience).[4]

Defendant's statements that shed light on the elements of the offenses, or motive or intent, should be admitted in this case as expressly permitted by *Mitchell*, regardless of whether any of those statements may otherwise constitute speech protected by the First Amendment.

### 2.  Defendants Should Be Precluded from Raising a First Amendment Defense to the Jury

The United States also moves *in limine* to preclude Defendant from arguing to the jury that his conduct was protected by the First Amendment.  None of the offenses with which Defendant is charged punish speech.  The crimes with which Defendant is charged punish actions taken during the riot.

---

[4] The court in *Fullmer* specifically noted that one defendant's conduct—which included writing an editorial and recruiting speakers to travel and advocate on behalf of his organization—was not criminal, and that punishing him based on that conduct alone would be unconstitutional.  *Fullmer*, 584 F.3d at 158.   The court nonetheless, citing *Mitchell*, held that this defendant's "conduct . . . does provide circumstantial evidence from which a jury could have reasonably inferred that Harper was involved in a conspiracy."  *Id.*

If the United States establishes the elements of any of the offenses with which Defendant is charged, the First Amendment provides no defense, even if evidence of Defendant's crimes are intertwined with political discussion and rhetoric.  *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the defendants' conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it."); *see also United States v. Hassan*, 742 F.3d 104, 127–28 (4th Cir. 2014) (citing *Amawi*).

Accordingly, any line of cross-examination or argument Defendant may wish to make regarding the First Amendment is irrelevant because it lacks a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, and because Defendant is not entitled to a First Amendment defense as a matter of law.  To the extent there is any relevance to any of Defendant's First Amendment claims, the Court should exclude any questioning and argument along those lines under Fed. R. Evid. 403.  Any attempt to shift the jury's attention to questions about whether Defendant's statements were protected by the First Amendment, rather than the charged offenses risks confusing the issues, wasting time, and unfairly prejudicing the jury.

### B.    Charging Decisions and Selective Prosecution

The United States moves *in limine* to exclude all evidence and arguments regarding its charging decisions.  The Supreme Court has recognized that the "Attorney General and United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)).  "They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take Care that the Laws be faithfully executed.'"

*Id.* (quoting U.S. Const. Art. II, § 3); *see* 28 U.S.C. §§ 516, 547.  As a general matter, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *see also United States v. Batchelder*, 442 U.S. 114, 125 (1979) ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints.").

Indeed, the D.C. Circuit has recognized that a selective prosecution claim implicates "an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged." *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983); *see also United States v. Stone*, 394 F.Supp.3d 1, 30 n.24 (D.D.C. 2019) ("[T]he Supreme Court found that a claim of selective prosecution is not a 'defense' that triggers discovery under Rule 16, because a claim of selective prosecution is not a response to the government's case-in-chief."); *Armstrong*, 517 U.S. at 463 (noting that a "selective-prosecution claim is not a defense on the merits to the criminal charge").  After all, evidence that some other individual is currently uncharged or has been charged with a lesser crime than those charged here has no probative value to the issues at trial and serves only to confuse or mislead the jury.  *See* Fed. R. Evid. 402, 403; *see also United States v. Reed*, 641 F.3d 992, 993–94 (8th Cir. 2011) (collecting cases and observing that "[s]everal circuits have unanimously upheld the exclusion of evidence of prior charging decisions on the ground that many factors unrelated to guilt may influence those decisions and their admission therefore risks misleading the jury and confusing the issues"); *United States v. Sutton*, No. CR 21-0598, --- F.Supp.3d ---, 2022 WL 13940371, at *18 (D.D.C. Oct. 23, 2022) ("These issues are irrelevant, inappropriate for consideration by the jury, invite jury nullification, and distract from the issues at trial.").

Defendant should be precluded from introducing evidence or making arguments regarding charging decisions made by the United States.  To the extent that Defendant seeks to present evidence or arguments that other individuals have not been charged for related conduct or that it is unfair that he has been charged, while other individuals involved in related criminal conduct remain uncharged or charged with lesser offenses, such evidence is irrelevant, inadmissible, and serves only to divert the jury's attention to matters unrelated to Defendant's guilt or innocence.

### C.    Entrapment or Public Authority Defenses

Defendant should be prohibited from making arguments or attempting to introduce evidence that law enforcement gave permission to defendants to enter the U.S. Capitol.  A public authority defense is available only where a defendant "has knowingly acted in violation of federal criminal law, but has done so in reasonable reliance on the authorization of a governmental official." *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015).  Relatedly, the defense of entrapment by estoppel applies only "to a defendant who reasonably relies on the assurance of a government official that specified conduct will not violate the law." *Id.* at 484–85.  Such reliance must be "objectively reasonable."  *United States v. Barker*, 546 F.2d 940, 948 (D.C. Cir. 1976). This defense is unavailable in this case, and the United States moves *in limine* to exclude evidence or argument targeted at such a defense.

As a threshold matter, Defendant have not provided the requisite notice for such a defense. Federal Rule of Criminal Procedure 12.3(a)(1) requires defendants to provide notice if they "intend[ ] to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense." Fed. R. Crim. P. 12.3(a)(1).  Such notice must be in writing and be filed with the clerk "within the time provided for filing a pretrial motion, or at any later time the court sets." *Id.*  The notice must

contain the law enforcement or federal intelligence agency involved, the specific agency member on whose behalf the defendant claims to have acted, and the time during which the defendant claims to have acted with public authority.   Fed. R. Crim. P. 12.3(a)(2)(A)–(C).   A failure to comply allows the court to exclude the testimony of any undisclosed witness except the defendant. Fed. R. Crim. P. 12.3(c).   Because, as of the date of this filing, Defendant has not served notice pursuant to Rule 12.3(a)(1), any such defense should be precluded.

Even where notice is not an issue, courts in other January 6 cases have excluded public authority or entrapment-by-estoppel defenses.  *See United States v. Williams*, No. 21-cr-377-BAH, at *2 (D.D.C. June 8, 2022), ECF No. 87; *see also United States v. Chrestman*, 525 F. Supp. 3d 14, 32–33 (D.D.C. 2021); Memorandum and Order (analyzing limitations on public authority defenses and noting their unlikely application in January 6 cases).   In the event Defendant belatedly provides notice of such a defense, the United States reserves the right to move to preclude such arguments at that time.

### D.    Jury Nullification

Defendant should be prohibited from making arguments or attempting to introduce irrelevant evidence that encourages jury nullification.   As the D.C. Circuit has made clear:

> A jury has no more "*right*" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law.  Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*Washington*, 705 F.2d at 494.   Evidence that serves only to support a jury nullification argument or verdict has no relevance to guilt or innocence.   *See United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C. Cir. 1975); *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise inadmissible under Rule 402 of the

Federal Rules of Evidence, is excluded, even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant.").   In particular, the Court should permit no argument, evidence, or questioning regarding the following topics, which would serve only to encourage jurors to decide the case based on factors other than the facts and the law.

### 1.   Use of Federal Resources and the Volume and Timing of Discovery

The United States requests Defendant be precluded from arguing or eliciting testimony regarding the volume, nature, or timing of discovery or the volume and type of federal resources used in the investigation and prosecution of the case.   Any attempt by Defendant to comment on discovery or allocation of federal resources is irrelevant and unduly prejudicial.   Fed. R. Evid. 401, 402, 403.   Instead, such arguments and testimony invite the jury to improperly consider its feelings towards the United States and the government's decision making about how to allocate resources.

### 2.   Defendant's Claimed Good Character

*Character Generally.*   The Court should exclude evidence and argument from Defendant on reputation or opinion evidence that Defendant is generous, charitable, family-oriented, religious, or a contributor to his community.   Evidence that a defendant possesses certain favorable character traits is admissible only when the trait is "pertinent" to the offense charged.   Fed. R. Evid. 404(a)(2)(A); *see, e.g.*, *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007); *United States v. Santana-Camacho*, 931 F.2d 966, 967–68 (1st Cir. 1991) (Breyer, C.J.).   But defendants may not provide evidence of possessing a generally good character.   *See, e.g.*, *United States v. Hill*, 40 F.3d 164, 168 (7th Cir. 1994) (court properly excluded "classic character evidence offered to prove that [defendant] had a good character and acted in conformity therewith").   Such evidence only promotes jury nullification and is not allowable.   *See United States v. Joseph*, 567 F. App'x 844, 849 (11th Cir. 2014) ("[W]hen the district court restricted defense counsel's comments about

[defendant]'s honor and social contributions—comments that were part of his jury nullification efforts—the court did not deny [defendant] the opportunity to make a legally tenable argument. Instead, it kept him from making impermissible arguments."). Because none of the above characteristics are relevant to the charged offenses, the Court should exclude any evidence and argument addressing these character traits.

*Specific Instances of Conduct.* The Court should also exclude evidence and argument of specific instances of Defendant's good character, including caring for family members, donations, attending religious services, performing charitable or civic work, or other forms of generosity. Rule 405(b) makes clear that unless a defendant's character or character trait is "an essential element of a charge, claim, or defense," he may not offer evidence of specific instances of good conduct. Fed. R. Evid. 405(b). Because none of the above instances of good conduct are relevant to an essential element of a charge, claim, or defense in this case, evidence of such should be excluded. *See United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002) (approving court's sentencing instruction that jurors should not "consider the religious views of the defendants"); *Santana-Camacho*, 931 F.2d at 967 (excluding evidence that defendant was a good family man and a kind man because it was not a trait relevant to the offense); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (holding evidence of "bravery, attention to duty, perhaps community spirit" were "hardly 'pertinent' to the [charged] crimes"); *United States v. Morison*, 622 F. Supp. 1009, 10111 (D. Md. 1985) (holding "patriotism" was not a relevant trait to the charged offense).

### 3.  Defendants' Claimed Ignorance of the Law

The Court should exclude evidence and argument from Defendant that he was ignorant of the illegality of the charged conduct. "The general rule that ignorance of the law or a mistake of

law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199 (1991). While there is a "narrow exception," *United States v. Brooks*, 681 F.3d 678, 700 n.18 (5th Cir. 2012), that exception is "reserved . . . to limited types of statutory violations involving 'complex' statutes—namely those governing federal tax law and antistructuring transactions." *United States v. Kay*, 513 F.3d 432, 448 (5th Cir. 2007); *see Bryan v. United States*, 524 U.S. 184, 195 (1998).

Because ignorance of the law is not a defense to any of the charged offenses, any evidence and argument that Defendant did not know that the charged conduct was illegal should be excluded as irrelevant, and Defendant should not be permitted to ask witnesses if they knew their conduct was illegal or whether they intended to commit crimes.

### 4. Penalties and Collateral Consequences

The Court should exclude evidence and argument of the potential penalties or consequences Defendant faces if he is convicted, including: (a) the maximum penalties; (b) that Defendant could be incarcerated; (d) that Defendant would become a felon and could be prohibited from obtaining some types of jobs or lose certain rights; and (e) any mention of the impact on Defendant's family.

The potential penalties faced by Defendant are irrelevant to the jury's determination of guilt or innocence. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[A] jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975))). "[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* at 579. Accordingly, the D.C. Circuit has held that "the jury is not to consider the potential

punishment which could result from a conviction." *United States v. Broxton*, 926 F.2d 1180, 1183 (D.C. Cir. 1991); *see, e.g.*, *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial."). Any discussion of possible penalties would serve no purpose beside improperly inviting the jury to render a verdict based on sympathy for the defendants—that is, to engage in jury nullification. *See United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974) ("[E]vidence which has the effect of inspiring sympathy for the defendant or for the victim . . . is prejudicial and inadmissible when otherwise irrelevant.") (quoting 1 Wharton's Criminal Evidence 164 at 304 (13th ed. 1972)); *United States v. White*, 225 F. Supp. 514, 519 (D.D.C 1963) ("The proffered testimony (which was clearly designed solely to arouse sympathy for defendant) was thus properly excluded.").

### 5.  Law Enforcement's Approach in Executing Arrest and Search Warrants

The Court should exclude evidence and argument by Defendant on the manner of his arrest by law enforcement. On December 22, 2022, FBI SWAT was utilized to effectuate an arrest warrant for Defendant at his residence. The use of FBI SWAT team was deemed to be the safest and most effective way to arrest Defendant because of his prior history of not complying with lawful orders, ownership of firearms, and concerning behavior towards law enforcement. Defendant's history included refusing service of a federal grand jury subpoena on February 21, 2022 at his residence; purchasing a firearm on March 1, 2022, after refusing service of the subpoena; posting a sign on his door that was threatening to law enforcement; and refusing orders and fleeing from law enforcement during a December 16, 2022 traffic stop.

On the day of arrest, the SWAT team breached Defendant's door at around 8:59 a.m. and a Crisis Negotiating Team began negotiating with Defendant. Defendant refused to exit and FBI

began employing various tactics to compel Defendant's surrender; including the deployment of pepper spray and shutting off water.

At around 9:30 a.m., SWAT breached a skylight on Defendant's residence to deploy a camera equipped drone.  Using the drone, a SWAT drone operator observed Defendant pointing a firearm towards the door where law enforcement would enter.   Defendant engaged in a nearly three-hour barricade situation with law enforcement, despite receiving multiple entreaties from his attorney and friends to set aside his weapons and surrender.

During the barricade situation, Defendant informed law enforcement he was "completely armed and willing to use 2nd amendment rights,"  "this is not going to end well," "this is not a legal warrant," "you have taken this too far,"  and "you better come in here shooting."   Defendant finally exited his residence at 12:18 p.m. and was placed in custody.

The United States anticipates Defendant may attempt to elicit testimony and evidence on the approach taken by law enforcement to effectuate his arrest.  During an online interview given by Defendant to a third party on March 21, 2023, he made the following statements, in sum and substance, about his arrest: FBI destroyed his home, FBI busted in the front door, FBI got on his roof and busted out a skylight, FBI shot out a sliding glass door, FBI threw in mace, and actions were taken against him over "bogus misdemeanor charges."

 The law enforcement methods used to effectuate Defendant's arrest, during a three-hour barricade situation, are not relevant to the charged offenses and are thus irrelevant to the jury's determination of guilt or innocence.  Defendant's purpose in introducing his view of his arrest would be to gain sympathy from a jury, which is prejudicial and inadmissible. *See United States v. Bell*, 506 F.2d at 226.   Accordingly, the United States seeks an order to preclude Defendant from eliciting testimony or presenting evidence on his December 22, 2022 arrest.   If Defendant is

permitted to present testimony or evidence on his arrest circumstances, then the government would seek to introduce Defendant's concerning behavior and threatening statements to law enforcement to ensure that the jury is not misled.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant the requested relief or, if the Court reserves ruling, to consider the above arguments when the relevant issues arise during trial.

Date: May 10 , 2023

                Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY
                D.C. Bar No. 481052

By:     /s/ *Raymond K. Woo*
                RAYMOND K. WOO
                AZ Bar No. 023050
                JASON M. MANNING
                NY Bar No. 4578068
                Trial Attorneys, Detailees
                Capitol Siege Section
                United States Attorney's Office
                for the District of Columbia
                601 D Street N.W.
                Washington, DC 20530
                (602)514-7736
                Raymond.woo@usdoj.gov
                (202) 514-6256
                Jason.Manning@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

On this 10th day of May, a copy of the foregoing was served on counsel of record for the defendant via the Court's Electronic Filing System.


Date: May 10, 2023                          By:   */s/ Raymond K. Woo*
                                                          RAYMOND K. WOO
                                                          AZ Bar No. 023050
                                                          JASON M. MANNING
                                                          NY Bar No. 4578068
                                                          Trial Attorneys, Detailees
                                                          Capitol Siege Section
                                                          United States Attorney's Office
                                                          for the District of Columbia
                                                          601 D Street N.W.
                                                          Washington, DC 20530
                                                          (602)514-7736
                                                          Raymond.woo@usdoj.gov
                                                          (202) 514-6256
                                                          Jason.Manning@usdoj.gov