UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.          ) | Case No. 1:23-cr-00005 (APM) |
| ) | |
| ERIC CHRISTIE,   ) | |
| ) | |
| Defendant.   ) | |

**DEFENDANT'S MOTION FOR TRIAL DATE CONTINUANCE**

Comes now the Defendant, ERIC CHRISTIE, by and through undersigned counsel, and respectfully moves this court pursuant to 18 USC Section 3161(h)(7)(A) to continue his trial from June 15, 2023 to July 25 - 28, 2023 or up to sixty days using alternate dates as may be agreeable to the Court and parties, to reset dates in the scheduling order for items due on and after June 1, 2023, and to exclude time under the Speedy Trial Act. Mr. Christie supports his request as follows:

**FACTUAL BACKGOUND**

The government arrested Mr. Christie almost two years after January 6, 2021, on December 22, 2022, (ECF No. 5) under an arrest warrant issued by a D.C. magistrate. An Indictment was entered into the record on January 5, 2023. ECF No. 7. He is charged with two misdemeanors 18 USC Section 1752(a)(1) - (2), with punishment enhancement for Section 1752(b)(1) because he had a household hammer notched into his belt loop as part of his LGBTQ outfit, where he never used, brandished, touched, or held the hammer or threatened anyone.

On January 6, 2021, Mr. Christie walked from his hotel to the east side of the U.S. Capitol (where permitted rallies on the grounds had not been cancelled), with no intent to violate any law. He did not enter the U.S. Capitol or go up steps to any doors or windows. He did not cross any police line or engage in any assault, violence, or property damage. He did not remove any barricades. He saw no signs indicating the east side of the U.S. Capitol was restricted or closed.

Any visible bike racks along approach walkways appeared to be for foot traffic control, and the few signs that were affixed to bike racks just read, "Property of the U.S. Capitol Police." At no time on January 6, 2021 did Mr. Christie encourage any violence or breach of police lines, or building doors or windows. He entered the east plaza shortly after a USCP officer announced he was getting permission for the people to go to the steps; another protestor repeated the message; police departed from the bike racks and the entrance appeared to legitimately open as the crowd moved forward onto the larger east plaza area and followed police to the steps. Mr. Christie did not interfere with anyone or anything as he moved to the south side of the east steps and began happily calling for a "MAGA Party" by him.

Instead of these facts, the government created its own narrative where in every motion-related writing it accuses Mr. Christie of acts that he did not commit. The indictment is devoid of facts. Nothing provided to Mr. Christie in discovery - to include the limited grand jury testimony of one FBI agent - provides support for the government's narrative that it endlessly repeats. Mr. Christie remains uninformed as to what alleged acts he must defend against that interrupted anything on January 6, 2021.

Mr. Christie submitted multiple discovery requests and the government left at least 90% unanswered to date, particularly in regard to the USCP and the alleged "restricted area." The government judgmentally told Mr. Christie that his requests were irrelevant, despite Mr. Christie's expectation the material was relevant, could lead to further discovery, and was needed for his defense. In its response to a Defense request (exhibit one), the government refers Mr. Christie to stacks of excel spreadsheets and bates numbers that accompany global discovery where instead of answering with the material, directs that he hunt for Waldo across a mass of irrelevant material. The government does not indicate it made any effort to obtain the materials from the USCP.

**LEGAL STANDARD**

Section 3161(h) of the Speedy Trial Act sets forth certain periods of delay which the Court must exclude from the computation of time within which a trial must commence. As is relevant to this motion for a continuance, pursuant to subsection (h)(7)(A), the Court must exclude:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).

This provision further requires the Court to set forth its reasons for finding that that any ends-of-justice continuance is warranted. *Id.* Subsection (h)(7)(B) sets forth a non-exhaustive list factors that the Court must consider in determining whether to grant an ends-of-justice continuance, including:

> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(iv)

Importantly, "[i]n setting forth the statutory factors that justify a continuance under subsection (h)(7), Congress twice recognized the importance of adequate pretrial preparation time." *Bloate v. United States*, 559 U.S. 196, 197 (2010) (citing §3161(h)(7)(B)(ii), (B)(iv)).

An interests of justice finding is within the discretion of the Court. See, e.g., *United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *United States v. Hernandez*, 862 F.2d 17, 24 n.3

(2d Cir. 1988). "The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion." *United States v. Rice*, 746 F.3d 1074 (D.C. Cir. 2014).

**ARGUMENT**

I. **Discovery Search and Ability to Prepare for Trial**.

For the first many months following the arrests of those accused of January 6th crimes, the government requested and was granted continuances because it had not organized or determined a way to share discovery. Now it has a Capitol Siege Discovery Unit that continues dropping large quantities of data in spurts into the Relativity and Evidence.com data bases. However, without identifying what in the Relativity data base specifically answers Mr. Christie's discovery request, the government's responses direct the Defense to search through over 7 terabytes of data. The spreadsheets with "bates" numbers often lack identification of the materials that allow reasonable searches.

Keyword searches for documents in Relativity are not reliable because the data is not thoroughly meta-tagged for such searches. The DOJ and its Capitol Siege Discovery Unit could locate requested discovery by Boolean searches of their own holdings, but that is not happening. More significantly, it appears the government made no effort to obtain Mr. Christie's requested discovery material from the USCP. The government's failure to directly respond now requires hundreds of search hours since unlabeled or unrelated batches of bates numbers provide no help.

Mr. Christie requested a trial at the earliest date because he is denied bond and sits in a jail where even Congresspersons have reported the poor conditions. None of the jails in the region used by the US Marshalls allow for timely sharing of discovery. The DC jail does not even post instructions for how attorneys can get digital discovery to defendants, and guards on duty during

4

previous attorney visits had no information on the matter. Sending paper copies of legal papers can take 5 - 8 days to reach Mr. Christie, should printing the voluminous call records and extractions from his phone even be feasible for example.

Because of government delays in providing requested discovery while providing volumes of what appears to be irrelevant and the result of general warrant searches, Mr. Christie requests the continuance in the interests of justice so he may be represented by a prepared defense and receive a fair trial. Currently, the defense cannot prepare properly given the lack of provision of the relevant discovery requested, and the dump of incoherent material that needlessly expends time. The government took nearly two years of domestic terrorism investigation time before arresting Mr. Christie but has continued to drop volumes of discovery , with the latest being on May 22nd, which encompassed over 17 GBs, and where hours of time trying to download all have not been successful. Even the flash drive the government sent to a MAC user that allegedly contains Mr. Christie's phone contents was in unreadable Windows format. Because the government did not disclose on March 17, 2023 that it did not have all the discovery ready to provide, and would not respond to Mr. Christie's legitimate requests, he would have requested the trail be scheduled in July - August as he is now requesting.

The need for reasonable time to organize and review voluminous discovery is among multiple pretrial preparation grounds that Courts of Appeals have routinely held sufficient to grant continuances and exclude the time under the Speedy Trial Act. See, e.g., *United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (Upholding ends-of-justice continuances totaling 18 months because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (Upholding two-month ends-of-justice continuance in firearm possession case, where

shortly before trial "1,000 pages of new discovery materials and eight hours of recordings" were provided); and *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (Upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

**II.     New Voluminous Discovery Available**.

The full context of January 6th is receiving intensive public scrutiny as 41,000 hours of CCTV footage relevant to January 6th has been made available to the Defendant and members of the public. Although the protective order and method of viewing video at an executive building by the US Capitol preclude crowd sourcing, the full context of what was and was not legitimately restricted will eventually surface. Mr. Christie is concerned and focused on his case where use of camera views in the relevant areas of the 41,000 hours of video is an inherent part of due diligence (The amount is more than double the CCTV footage previously thought to exist). The discovery and review problem time needed has increased given the new availability of surveillance footage released by Speaker McCarthy that the undersigned is coordinating to view on June 6-7, 2023. The ability to use camera searches at specific locations and times will be beneficial, especially since more cameras and footage are included than what is in Relativity. The existing data bases, even if they have the material, require untold hours for downloading from the data bases, and hours to review, and hours to do anything useful with the material. Mr. Christie has had to acquire investigative assistance because the government has not provided such a simple method.

Currently, with recent government drops of innocuous large volumes of audio and video, at least fifty hours is required to go through that. And none of that material was in direct response to Mr. Christie's discovery requests. The Federal Government is the creator of the circumstance we now face. January 6th defendants have universally demanded all available discovery for the

past two years. The Defendant and other January 6th Defendants have been repeatedly denied for the past two years. The revelation of this newly discovered evidence and the process one must go through to access it has now been thrust upon the Defendant and this Honorable Court.

For footage discovered in the recently released video available at the Capitol, there still will be a waiting time for USCP security review prior to release for Mr. Christie's use. None of that, and the associated evidence preparation, can happen in substance before June 21, 2023. Because counsel for the Defendant requires a short continuance to effectively prepare, and taking into consideration the due diligence requirement to view the released video footage for expected exculpatory evidence and a full context view for Mr. Christie, the Court can allow the continuance in the interests of justice that outweigh the best interests of the public in a speedy trial.

It should be noticed that with video evidence and the kinds of scenes depicted, it is often not possible to skip videos. With people in a crowd milling about, one does not know if at the end of the video the Defendant will show up walking through the scene or a view of a potential witness will show their location at a certain time that would have a bearing on their materiality as a witness. Similarly, at some point during the video a law enforcement officer may be seen doing something inconsistent with their expected testimony at trial. Or something the Defendant is accused of may be seen being done by someone else instead. The time required is not just matter of looking for the Defendant. Furthermore, in prior January 6th trials, the government has chronically shown videos that depict only part of the story. Videos may be vital because they can show the entire sequence of events, including what happened (or did not happen) before or after the segment that the Government relies upon. Mr. Christie requires more time for his defense team to do its due diligence where he is being accused of acts that video, audio, and other document investigation

will show were due to provocateurs, agitators, and even government agents or persons acting under agency.

**III.     Government Failure to Provide Requested USCP Discovery.**

Under the jurisprudence of *Brady v. Maryland*, because the U.S. Capitol Police is one of two lead agencies investigating these events along with the FBI, whatever the USCP holds records or information are constructively in possession of the prosecution. Again, the USCP is both a complaining victim and perhaps the lead (most on site, most on point) investigative agency. While Brady obligations do not extend to the entirety of the government, they do include investigative agencies or agencies closely related who knew or should have known that information would be material to a prosecution arising from their direct involvement. Here the U.S. Capitol Police are directly related and fully aware of the events of January 6, 2021.

> However, the Brady doctrine requiring disclosure of exculpatory information has been extended to situations where a division of the police department not involved in a case has information that could easily be found by the prosecutors if they sought it out, see Brooks, 296 U.S.App. D.C. at 221, 966 F.2d at 1502, and there is a duty to search branches of government "closely aligned with the prosecution," id. at 222, 966 F.2d at 1503 (citation omitted). . . .

Robinson v. United States of America, 825 A.2d 318 (D.C. 2003)

If the government does not provide the requested USCP and related police agency materials and continues to refuse to ask, Mr. Christie will ask this Court to entertain his motion to compel. Here, the government adds more unnecessary delay to unfairly prejudice a Defense that needs to effectively prepare for trial. The government's response in Exhibit One more than infers it has not sought out the requested material that in fact resides within government.

**IV.     Time to Reestablish a Defense Team**.

Due to the unfortunate circumstances of a health issue, the planned second chair for Mr. Christie's trial cannot travel. The undersigned worked diligently to obtain a second chair. A trial date before mid-July does not allow their preparation and contribution for a fair trial given their current court calendar due dates and cases.  Further, because the undersigned has a family member with health issues that have in the past required emergency return home of the undersigned, it is only prudent that a second chair who is available and could take lead on the case - whether for period before or during trial - in the event of a health emergency.  The new second chair must have time to review the overall contents of the 17+GB of discovery delivered on the night of May 22, 2023 and earlier, assist with identifying what is relevant in the mass of 7+ TBs and over a million document in Relativity, as well as other evidence and witnesses already under consideration for trial use by the Defense. The government's failure to provide the requested discovery has negatively impacted the full development of the Defense's trial strategy that must now be reassessed by the Defense team.  Because of this, a continuance should be granted in the interests of a fair trial and justice.

**V.     Witnesses**.

The trial strategy will include witnesses as well as other evidence.  One of the more key witnesses, who may serve as a summary witness, will no longer be available prior to July. Other witnesses were put off by the government's decision to take up to three days where the date of their testimony remained unclear (must they travel to be present on day two, three, or a day four - based on the government's new estimate that it needed three days even for a bench trial for a single defendant with two charged counts?). Some need to receive permission from their place of

employment. Trial dates, especially if the Court accepts the jury waiver for a bench trial, for the middle of July that can be settled will allow their planning and ability to testify.

Because the trial strategy has been impacted by the new volumes of video that the Defense must examine to some extent using due diligence, as well as the government's direction that the Defense search through 7 TBs of global discovery on the hunt for answers to its requests, the Defense cannot be ready for trial as scheduled and requests a continuance in the interests of justice and fairness.

## CONCLUSION

Because a failure to grant a continuance would likely result in a miscarriage of justice, as set forth in 18 U.S.C. § 3161(h)(7)(B)(i); and the additional time requested is a reasonable period of delay, as the request is for more time to prepare for trial, to investigate the matter, to gather evidence material to the defense, and to consider possible defenses with a prepared and available defense team; and the Congress has produced discovery that will require additional time to review and conduct follow-up investigation, and the Defense must still search out USCP material the government has not provided,  the ends of justice will best be served by a continuance, that outweighs the best interests of the public .

Wherefore, Mr. Christie respectfully requests that you grant this request in the interests of fairness and justice, and for good cause shown.

Dated May 30, 2023                              Respectfully submitted,

/s/ *Carolyn A. Stewart*
Carolyn A. Stewart, Bar No. FL-0098
Defense Attorney
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
Tel: (813) 659-5178
Email: Carolstewart_esq@protonmail.com

**CERTIFICATE OF SERVICE**

I hereby certify on the 30th day of May 2023, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Carolyn Stewart Esq.
Carolyn Stewart, Esq.