## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *v.* | ) | Case No. 1:23-cr-00005 (APM) |
| | ) | |
| ERIC CHRISTIE, | ) | |
| | ) | |
| Defendant. | ) | |

### ERRATA ECF NO. 67 DEFENDANT'S RULE 33 MOTION FOR A NEW TRIAL

Comes now the Defendant, ERIC CHRISTIE, by and through undersigned counsel, and respectfully moves this court to grant his timely motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The Government opposes this motion. Mr. Christie supports his request as follows:

## I.       INTRODUCTION

On August 11, 2023, Judge Mehta returned guilty verdicts on both counts: 18 U.S.C. §§ 1752(a)(1) and (a)(2), with the (b)(1) deadly or dangerous weapon enhancement.  The bench trial was scheduled for August 7 - 8, 2023 but over the prior weekend was changed to August 8 -9, 2023. On August 9, 2023, Judge Mehta deferred his verdict until the afternoon of Friday August 11, 2023. This motion is timely filed pursuant to Fed. R. Crim. P. Rule 33.

Prior to trial, Mr. Christie submitted a Memorandum of Law for defining a "deadly or dangerous weapon" according to the standards applied for multiple statutes, including 18 U.S.C. § 111(a) or (b) as used across the federal circuits when the object involved is not inherently dangerous and does not become a deadly or dangerous weapon unless used with the intent to cause serious bodily injury or death. ECF No. 61. Judge Mehta departed from the usual standard and created a novel construction just for this trial and U.S.C. § 1752(b)(1)(A) that is not aligned with

what is used across the federal circuits for 18 U.S.C. crimes that do not provide definition of a not inherently dangerous object as a dangerous weapon. ECF No. 64.

His ruling is also not aligned with the definition contained in 40 U.S.C. 5104, even though many Defendants are simultaneously charged with a "deadly or dangerous weapon" enhancement that involves a non-inherently dangerous object (such as a chair, flagpole, lacrosse stick, traffic cone, etc.) in indictments for 18 U.S.C. §§ 111(a) or (b), 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. § 5104. Now, if Judge Mehta's novel construction applies, January 6 defendants will have to defend against multiple standards for what comprises a deadly or dangerous weapon when a non-inherently dangerous object is or is not used as charged for distinct crimes.

The standard in 40 U.S.C. § 5104, that applies to what may be carried on the U.S. Capitol grounds or in the building, is clear as it applies to listed items declared as deadly or dangerous by nature. (See the EXHIBIT 1 for the statute's referenced Act of 1932). The Defense showed the list of what the United States Capitol Police (USCP) currently list as prohibited multiple times at trial. See EXHIBIT 2. The USCP may remove other non-listed items at entry screening points but nowhere list possessing a hammer, bicycle wrench, mace for protection, and many other non-inherently dangerous items as being prohibited or as being a crime when outside on the east plaza of the grounds. The United States Capitol Police (USCP) do not screen runners, walkers, tourists, and cyclists who cross the outdoor grounds.

Although the government had not objected prior to trial, Judge Mehta refused to allow the Defense to examine its expert witness about the United States Secret Service (USSS), the sixty-plus years' procedures for establishing Section 1752 restricted building and grounds, the authorities of the USSS versus the USCP, and what each agency receives a budget for - indicating Congressional intent for the Section 1752 law. Judge Mehta declared all of the expert's testimony

irrelevant because he had decided that Section 1752 required no coordination with the USSS, that the closing of the east plaza had no requirement to meet standards for a USSS restricted area, that closure of an outdoor area of unlimited distance and boundary by anyone for any reason when the Vice President was inside the building made Section 1752 apply, that the Vice President or any other USS protectee did not need to have planned to, or actually visited the outdoor area, (despite the language of the statute) where the USCP can have closed any sized area for any reason and the DOJ and Court can after the fact say without evidence that the area was for protection of a USSS protectee.

There was no evidence entered by any witness testimony or document that the USCP had closed the east plaza as a restricted area extension for protecting the Vice President while he was inside the building. There was no evidence that the east plaza was closed for any reason other than to violate the First Amendment and to control the plaza as a parking area. The evidence showed no security standards were implemented outside of placing unlatched and unmarked bike racks that had breaks built in. The evidence showed that the USCP leadership ignored calls for reinforcements to prevent grounds entry. The evidence showed that the USCP did not increase normal manning for security.

The Court ignored the itinerary that proved the Vice President was never scheduled to go outside, as well as the complete lack of any evidence that the outdoor area was "closed" for Vice President security. There were no outdoor security standards other than a limited number of police and bicycle racks that in some locations said "property of the United States Capitol Police" - while the Court refused to allow expert testimony that the USSS would never have allowed the Vice President to go outdoors under the security conditions even without protestors nearby because the allegedly "closed" area did not meet any reasonable security standards. In other words, the Court

refused to allow testimony that the east front plaza was not closed by any standard for protection of any USSS protectee whether inside the building or outside.

Even though no witness or evidence showed whether the USCP or a protestor threw a flash bang or cherry bomb near the top of the steps while Mr. Christie was below the steps, the Judge stated that the noise alone was notice to Mr. Christie that he should leave the area. No dispersal order was given, and no use of the outdoor loudspeaker was attempted to warn people to leave the area.

After the evidence had closed on the afternoon on August 9, 2023 Judge Mehta introduced a new standard for Section 1752. In a query session only with the Government regarding a new view of 18 USC Section 1752(b)(1) "in relation to" language, he referred to *Smith v. United States*, a US Supreme Court case from 1993. He asked the government if the object had to be used as part of Section 1752(b)(1) and the government responded "no." The Court said the case required some use "in relation to" the offense. The holding from the actual case was, "We decide today whether the exchange of a gun for narcotics constitutes 'use' of a firearm 'during and in relation to . . . [a] drug trafficking crime' within the meaning of 18 U.S.C. § 924(c)(1). We hold that it does." *Smith v. United States*, 508 U.S. 223, 225 (1993). The case, ironically used since it is about an inherently dangerous weapon, is clear that the inherently dangerous weapon must somehow be used in relation to be committing the drug trafficking crime. During Court rendering of the verdict, the Court erred in saying that Mr. Christie used the hammer in relation to Section 1752. (Relevant Case extracts not applied by the Court attached as exhibit).

As a matter of injustice due to lack of due process, the Court did not allow any Defense opinion about the new standard it intended to apply from the *Smith* case.

## II.    FACTS

Mr. Christie's proposal for a non-inherently dangerous or deadly object (i.e., a hammer never used) aligned with the standards under Section 111 and required being on Section 1752 restricted grounds:

> Whether the defendant had any motive or prior intent to use the object is not a required element. The defendant had to use or attempt to use the object to cause serious bodily injury or death to another. "Attempt to use" without actual use may apply if it can be proven that the defendant deliberately used methods to defeat an entry point's screening metal detector, X-ray, or search.

ECF No. 61 at 19

The existing standard used across federal circuits for crimes where a non-inherently dangerous object is involved is: "[f]or an object that is not inherently deadly [such as a gun], … the object must be capable of causing serious bodily injury or death to another person and the defendant must use it in that manner." *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002). Within this District, the standard has been:

> Thus, though there is evidence of Mr. Gieswein holding the baseball bat and storing it in his backpack, the government has not provided evidence that Mr. Gieswein used, attempted to use, or threatened to use the baseball bat against another during the events of January 6, 2021."

United States v. Gieswein, Crim. Action No. 21-24 (EGS), at *42 (D.D.C. July 27, 2021).

During the Pretrial Conference on July 28, 2023, Judge Mehta disallowed the use of the existing standard across federal circuits and intra-District under 18 USC Section 111 to find guilt for use of a non-inherently dangerous object.

Even though Section 1752 was designed to prevent assaults and attacks on USSS protectees, Judge Mehta said the standard used for assault should not apply. He repeated an example of a person who stated out loud that he was going to go in the restricted area and attack, and made clear that if police intercepted the person, there should be guilt. He rejected the

application of "attempted assault" as non-use that could infer guilt. The question of what is "intent" versus a fabricated "thought crime" revolved around Judge Mehta's example that the person must have declared intent to use the object in the restricted area. That is not what he applied to find Mr. Christie guilty. In his ruling for new law for Section 1752(b)(1), Judge Mehta held:

> So, for the foregoing reasons, the court will define an object as "deadly or dangerous" for purposes of § 1752(b)(1)(A) if it is capable of causing serious bodily injury or death to another person, and the defendant carried it with the intent that it be used in a manner capable of causing serious bodily injury or death. The defendant need not have actually used the object in that manner.

ECF No. 64 at 3.

The above standard was not applied to find Mr. Christie guilty. Evidence showed Mr. Christie in addition to wearing the hammer as costume expressive speech, said in a text to his brother months after January 6, 2021 that it was for protection. Then in a recorded jail call he answered a reporter's question by saying it was protection against ANTIFA (known to attack Trump supporters en route to and from rallies) and isn't self-defense legal. At no time did Mr. Christie say he would use the hammer to cause serious bodily injury or harm to anyone. The deterrent expressive speech was ignored, as was the complete absence of any words that evidenced intent to cause serious bodily injury or harm. Again, the Court created facts not in evidence and gave no heed to "beyond a reasonable doubt" when applying the rule it created just for this case.

Judge Mehta stated in his reading of the verdict that for 18 U.S.C. Section 1752 he rejected that an area be restricted specifically for the protection of a USSS protectee. He stated that because the statute does not require USSS participation there is no limitation on the authority that restricts the building or the grounds.

Judge Mehta found that despite a pullback order for police to go to the building where video showed police departing the bike rack line, that the bike rack line broke due to fighting.

Judge Mehta credited an FBI statement that the fight with police could be seen from Mr. Christie's location well away from the line, even though the agent conducted no line of sight demonstration with the 75 -100 people and body density that blocked line of sight to the waist height level of the bike racks where pushing happened at the same time as the pullback order.

40 U.S.C. Section 5104 specifically provides the following definition:

> (2) DANGEROUS WEAPON.-The term "dangerous weapon" includes-
> (A) all articles enumerated in section 14(a) of the Act of July 8, 1932
> (Ch. 465, 47 Stat.654); and
> (B) a device designed to expel or hurl a projectile capable of causing injury to individuals or property, a dagger, a dirk, a stiletto, and a knife having a blade over three inches in length.

Section (i) prohibits having the specified dangerous weapons on the Capitol grounds or in the building. Separate rules allow members of Congress and active military to carry firearms.

The policy at the Capitol Visitor Center is that all contraband should be deposited in the equivalent of an amnesty box.

The USSS always establishes screening points and issues access pins to anyone authorized to enter a restricted area. There were no screening points outdoors on January 6, 2021. Construction workers with no supervision or entry screening were allowed to be on the west grounds.

## III.   LEGAL STANDARD

The court may grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a). The court, however, should not grant a Rule 33 motion based on insufficiency of evidence unless the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Walker,* 899 F. Supp. 14, 15 (D.D.C. 1995) (quoting *United States v. Martinez,* 763 F.2d 1297, 1313 (11th Cir. 1985)). "This power should be exercised with caution, and is invoked only in those exceptional cases in

which the evidence weighs heavily against the verdict." *United States v. Edmunds,* 765 F. Supp. 1112, 1118 (D.D.C. 1991). Moreover, "[e]ven where errors occur, a new trial should be granted only if the moving party has shown that the error was substantial, not harmless, and that the error `affected the defendant's substantial rights.'" *Walker,* 899 F. Supp. at 15 (quoting *United States v. Johnson,* 769 F. Supp. 389, 395-96 (D.D.C. 1991)).

A "[c]ourt evaluates a Rule 33 motion from a different vantage point than [the one from which] it evaluates a Rule 29 Motion for Judgment of Acquittal." *United States v. Edmonds,* 765 F. Supp. 1112, 1118 (D.D.C. 1991). "In [assessing] a Rule 33 motion for a new trial . . . [a] [c]ourt need not accept the evidence in the light most favorable to the government, and the [c]ourt may weigh the testimony and may consider the credibility of the witnesses." *Id.*

## IV.    ARGUMENT

The failure to allow the defense expert witness and the associated exhibits; the Court's introduction of facts not in evidence; the novel construction of Section 1752 that allowed the government and Court to invent non-existent intent and thought crime by Mr. Christie when he never indicated intent to use the hammer to cause serious bodily injury or harm to anyone; the error in stating the hammer was used in relation to Section 1752 by misapplication of the *Smith* case; the apparent disregard for "beyond a reasonable doubt" as a standard; and declaration of other facts never shown in evidence created a great injustice against Mr. Christie.

He was not allowed to show that there was never any warning or order to leave the area. The Court ignored that not a single witness stated any knowledge of who declared the east front plaza to be closed. The Court ignored that no testimony or evidence showed that any outdoor closure was for the purposes of protecting the building or Congress.  The Court allowed a claim that the Vice President was a visitor to Congress when that was untrue - he was the President of

the Senate and was not visiting Congress. The Court allowed lay opinion concerning line of sight that was at best a biased fabrication since available line of sight engineering was not used. Nor were the conditions remotely similar to January 6th regarding the visual obstacles between Mr. Christie's location and the breach. The Court ignored testimony regarding the breach from the north that occurred prior to the pullback order that the Court ignored.

The Court did not consider that Mr. Christie heard the multiple loud announcements that police were getting permission for protestors to go to the steps.  At the same time, the Court credited the weak assertion, without use of any technical line of sight engineering that is available to the FBI and USCP, that Mr. Christie saw the bike rack breach.

Since the standard of "beyond a reasonable doubt" was not ever apparently applied, the verdict is an injustice. The bench trial was treated as if it was a motion rather than requiring a standard of beyond a reasonable doubt.

The government never presented a shred of evidence that any government business was disrupted by Mr. Christie's presence. In fact, the government claimed his acts "could have" caused some annoyance. The Court accepted the "could have" standard in convicting on Count Two. The statute requires a definitive disruption of government business. Because every witness stated they never saw and did not recognize Mr. Christie from January 6, 2021, that speaks for itself regarding why a new trial is needed.

The decision to create novel law for a non-inherently dangerous object where Mr. Christie was convicted on the Section 1752(b)(1) enhancement when he never threatened anyone with the hammer, never said he would use the hammer to cause serious bodily injury, and never said anything about using the hammer in the restricted area requires a new trial. The Court created thought crime that was not supported by any evidence even for its novel construction law.

9

Because the verdict relied on unfair declarations that lacked evidence, and resulted from Mr. Christie not being allowed to present his case and exhibits, he should be afforded a new trial. While Section 1752(a)(1) may have been a close call had the evidence been considered, the government did not prove the essential element of disruption of government business in Section 1752(a)(2) and no evidence supported conviction of the Section 1752(b)(1) enhancement - even under novel rules. The evidence in this case preponderates against the conviction.

## V.     CONCLUSION

Wherefore, because of the injustice that resulted from the trial and the convictions, Mr. Christie should be afforded a new trial.

Dated August 25, 2023 2023                  Respectfully submitted,
Errata corrections made on August 26, 2023

/s/ *Carolyn A. Stewart*
Carolyn A. Stewart, Bar No. FL-0098
Defense Attorney
Stewart Country Law PA
1204 Swilley Rd.
Plant City, FL 33567
Tel: (813) 659-5178
Email: Carolstewart_esq@protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify on the 26th day of AUGUST 2023, a copy of the foregoing errata and

corrections was served upon all parties as forwarded through the Electronic Case Filing (ECF)

System.

/s/ *Carolyn Stewart*
Carolyn Stewart, Esq.