# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| v. | ) ) | Criminal No. 23-cr-00005 (APM) |
| **ERIC CHRISTIE,** | ) ) ) | |
| **Defendant.** | ) ) | |

## ORDER

Defendant Eric Christie moves for a new trial following his guilty verdicts for violating (1) 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Count One) and (2) § 1752(a)(2) and (b)(1)(A) (Count Two). Errata ECF No. 67 Def.'s Rule 33 Mot. for a New Trial, ECF No. 68 [hereinafter Def.'s Mot.]. Defendant's motion raises several arguments that overlap with one another. The court has done its best to tease them apart. As explained below, none of them warrant a new trial.

> *1. Errors relating to the interpretation and application of "deadly or dangerous weapon" for purposes of § 1752(b)(1)(A).*

Defendant first maintains that the court erred when it declined to interpret "deadly or dangerous weapon" under § 1752(b)(1)(A) to require actual "*use*[] [of the object] with the intent to cause serious bodily injury or death." Def.'s Mot. at 1 (emphasis added). The court considered this argument at length pretrial, both in written submissions, *see* ECF Nos. 58, 61, and orally during the pretrial conference. Ultimately, the court disagreed with Defendant's proposed definition and explained why in a written order. *See* Order, ECF No. 64 [hereinafter 1752(b) Order]. Defendant's present motion does not offer any argument not previously considered,

*see* Def.'s Mot. at 2, 5–7, and the court continues to believe that it adopted the correct definition of "deadly or dangerous weapon" for purposes of § 1752(b)(1)(A).[1]

Defendant also claims that the evidence did not show that the hammer he possessed was a "deadly or dangerous weapons" under the court's definition. *See* Def.'s Mot. at 6. The court, however, fully set forth the evidence that supported its findings and explained why Defendant's defenses did not warrant an acquittal. Verdict Tr., ECF No. 76-1, at 31–40. Defendant thus has not shown that the evidence "preponderate[d] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Edmonds*, 765 F. Supp. 1112, 1118 (D.D.C. 1991) (citing *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985)). *See also United States v. Wiley*, 517 F.2d 1212, 1214 (D.C. Cir. 1975) ("We hold that only in a narrow set of circumstances are retrials permitted in the interest of justice following reversals based on the insufficiency of the evidence to withstand the defendant's motion for judgment of acquittal.").

Defendant further objects to the court having asked government counsel during his summation to identify what evidence supported the "in relation to" element of the felony enhancement under § 1752(b)(1)(A). Def.'s Mot. at 4; *see* Tr., Aug. 9, 2023, at 137–139. The court's question referenced the Supreme Court's decision in *United States v. Smith*, 508 U.S. 223 (1993), in which the Court defined the "in relation to" element under a different statute, 18 U.S.C. § 924(c)(1). Defendant asserts that the court violated his "due process" rights by "not allow[ing] any Defense opinion about the new standard it intended to apply from the *Smith* case." Def.'s

---

[1] Defendant's citation to *United States v. Gieswein*, Def.'s Mot. at 5, is misleading. There, the court, in the context of a pre-trial bond review, evaluated whether a baseball bat was a dangerous weapon for purposes of an alleged violation 18 U.S.C. § 111(b) and found that, because the bat was not used, the evidence was "relatively weaker" that the bat so qualified. *United States v. Gieswein*, No. 21-cr-24 (EGS), 2021 WL 3168148, at *14 (D.D.C. July 27, 2021). This court, however, already explained in its Order why actual "use" of a non-inherently dangerous object, like a bat or hammer, is necessary under § 111(b), but not § 1752(b). 1752(b) Order at 2 (distinguishing § 111(b) because it requires as an element "use" of a deadly or dangerous object, whereas § 1752(b) makes it a crime to use *or carry* such an object). *Gieswein* does not alter that reasoning.

Mot. at 4. That is wrong. The defense had every opportunity to address *Smith* and the "in relation to" element during its summation but chose not to. In delivering the verdict, the court identified the facts that established the "in relation to" element. Verdict Tr. at 39–40. There was no deprivation of due process.

  2. *Errors concerning the "restricted building or grounds" element of § 1752(a).*

The court found that the "restricted building or grounds" onto which Defendant had entered and remained for purposes of § 1752(a) was the East Plaza of the United States Capitol. Verdict Tr. at 20–22. Defendant contends that the determination was erroneous, advancing the same legal and factual arguments the court rejected at trial. *See* Tr., Aug. 9, 2023, at 78–100. These rehashed positions do not warrant a new trial.

For one, the government was not required to prove that "the [U.S. Capitol Police] had closed the east plaza as a restricted area extension for protecting the Vice President *while he was inside the building*." Def.'s Mot. at 3 (emphasis added). It was sufficient that that the East Plaza was within "any posted, cordoned off, or otherwise restricted area of a . . . grounds where . . . [the Vice President] is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). That is what the evidence established. For example, Captain Mendoza of the U.S. Capitol Police testified that the secured perimeter was established to keep the Vice President and other dignitaries safe and to maintain order for the Certification proceedings. Aug. 8, 2023, at 22–24. Special Agent Glavey of the U.S. Secret Service similarly testified that securing the east side of the Capitol was necessary because it was the area where the Vice President's motorcade would arrive and depart. *Id.* at 70–72. Defendant did not challenge this testimony.

Defendant also believes that more proof was required to establish the existence of a "restricted grounds." He faults the lack of evidence about "security standards," criticizes the

3

Capitol Police for "ignor[ing] calls for reinforcements to prevent grounds entry," and baldly asserts that the only reason for the East Plaza's closure was to "violate the First Amendment." Def.'s Mot. at 3. None of these critiques warrant a new trial.

Additionally, Defendant takes issue with the court's finding that he knew that he had entered and remained on restricted grounds on January 6th. Def.'s Mot. at 8–9. Defendant's criticisms are primarily aimed at the court's balancing of evidence and its crediting of certain witness testimony. *Id.* The evidence showed that Defendant ran onto the East Plaza after witnessing a police line (including physical barriers) and skirmishes along that line, he confronted police officers who had fallen back to establish a perimeter on the stairs, and he remained atop a government-owned truck for 30 minutes while egging on a large crowd. Verdict Tr. at 22–26. And then there were Defendant's own words. He encouraged one person to, "Storm it, girl, storm it," before the police line broke. *Id.* at 23. He screamed into a megaphone, "Do it, go in, that's your Captiol." *Id.* And he later texted a friend: "Um, Jen, we literally broke into the Capitol." *Id.* at 26. These actions provide ample proof to support the court's finding that Defendant knew he had entered and remained on restricted grounds.

   3.  *Errors concerning the "impedes or disrupts" element of § 1752(b).*

Defendant next challenges his § 1752(b) conviction, asserting that "[t]he government never presented a shred of evidence that any government business was disrupted by Mr. Christie's presence." Def.'s Mot. at 9. That is not true. Vice President Pence was taken to a secure location at the same time Defendant was perched on top of a government-owned truck exhorting an unruly crowd. Verdict Tr. at 31. His actions also impeded the police's ability to carry out their duties. *Id.* A new trial is not warranted on the § 1752(b) count.

4

   4.   *Excluding the defense's expert.*

Finally, Defendant maintains that the court committed error by excluding his proposed expert's testimony. Def.'s Mot. at 2–3.

In his Rule 16 pre-trial disclosure, Defendant proffered that the expert would "address and offer opinions on the designation and implementation of a Section 1752 restricted area," the need for coordination between the Capitol Police and the Secret Service to create a restricted area, the feasibility of an outdoor restricted area, and the propriety of restricting large portions of the U.S. Capitol grounds as a restricted area on January 6th. Gov't Opp'n to Def.'s Mot., ECF No. 69, Ex. A, ECF No. 70-1 (Defendant's Rule 16 disclosure). The court held an extended colloquy with defense counsel about the proffered testimony and concluded that it was not relevant to any element or defense. Tr., Aug. 9, 2023, at 78–100.

The court stands by that decision. The relevant question at trial was whether a "restricted grounds," as defined by § 1752(c)(1), had been established in the areas that Defendant entered and remained on January 6th. Disputing the size, scope, or need for the designated restricted area, or the procedures used to create the area, had no bearing on that question. The defense expert was properly excluded.

For the foregoing reasons, Defendant's Motion for a New Trial, ECF No. 67, is denied.

Dated: November 30, 2023

Amit P. Mehta
United States District Court Judge